790 F.2d 1153
 32 Ed. Law Rep. 445
 ALAMO HEIGHTS INDEPENDENT SCHOOL DISTRICT,
Plaintiff-Appellant-Cross-Appellee,
v.
STATE BOARD OF EDUCATION, et al., Defendants-Appellees,
Mrs. Beverly G. & Steven G., Intervenors-Appellees-Cross-Appellants.
 No. 84-1762.
 United States Court of Appeals,
Fifth Circuit.
 May 29, 1986.
 
 Randolph P. Tower, Clemens, Spencer, Welmakfr & Finck, Jeffrey I. Kavy, San Antonio, Tex., for plaintiff-appellant-cross-appellee.
 Susan Feller Heiligenthal, Texas Assoc. of School Boards, John S. Aldridge, Austin, Tex., for amicus Texas Association of School Boards, et al.
 Reed Martin, Atty., Austin, Tex., for amicus-Advocacy, Inc.
 Jim Mattox, Atty. Gen., Kevin O'Hanlon, Austin, Tex., for State Bd., etc. & Comm. of Educ., etc.
 Donald S. Bayne, Johnson & Christopher, Henry W. Christopher, Jr., San Antonio, Tex., for Beverly G. & Steven G.
 Appeals from the United States District Court for the Western District of Texas.
 Before GEE, RUBIN and DAVIS, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 The primary issues presented by this appeal are whether, under the Education for All Handicapped Children Act (EAHCA),[1] Steven G., a multiply handicapped child, is entitled to educational services beyond the usual 180-day school year and whether after-school transportation of Steven a short distance out of his school district to his only available custodian is a "related service" required by the EAHCA. The district court, after a de novo review of a magistrate's findings of fact and conclusions of law, concluded that (1) Steven G. would experience significant regression without some sort of summer program, and that, therefore, the School District was required to include in Steven's "individualized education program" (IEP) a provision for structured summer services; and (2) the School District was required to provide out-of-district transportation for Steven from his educational placement so that his working mother could rely on a custodian to care for Steven until she could pick him up. Because the court's findings of fact are supported by the record and its application of the EAHCA was correct, we affirm its judgment.
 
 I.
 
 2
 Steven G. was born July 30, 1972. He lives with his mother, Beverly G., within the boundaries of the Alamo Heights Independent School District. Steven suffers from cerebral dysplasia or hyperplasia, which is an abnormal development of the brain. Steven's hands and face are deformed. He has an unusual laxity in his joints, an uncoordinated gaze, a significant lack of muscle tone, and can walk only with assistance. He has been diagnosed as severely mentally retarded, has frequent tantrums, and cannot communicate by oral expression, although he does communicate by means of pointing to pictures and symbols on a "communication board." Because of Steven's mental and physical handicaps, he is not, in education terminology, considered "educable," but rather is "trainable," that is, he can be taught to communicate with others and to take care of his physical needs.
 
 
 3
 From September 1975 to May 1977, Steven attended a Head Start program which operated on a twelve-month basis. In September 1977, he was enrolled in a half-day program at the Cerebral Palsy Center and then in September 1978 he was enrolled in the first grade in an elementary school in the Northside School District. In the summer of 1979, when Steven was seven, his mother moved into the Alamo Heights Independent School District. That school year Steven attended a special education program at Cambridge Elementary School. In the late spring of 1980, Mrs. G. requested that the Alamo Heights Independent School District provide summer services for Steven.
 
 
 4
 For seven years prior to 1980 the Alamo Heights School District had offered a summer program to all special education students who were moderately or severely handicapped. The decision to offer the program was made on the administrative level, as a matter of district policy, and any moderate to severely handicapped child was eligible to attend. In the summer of 1980, when Steven would have been eligible for this program, however, the School District changed its policy and offered only a half-day one-month program, without providing transportation. The decision to curtail the summer program was based on its cost and the apparent lack of interest on the part of teachers and eligible students in previous years.
 
 
 5
 No students from Steven's multiply handicapped class took advantage of the 1980 summer program, nor did Steven. It is not clear, however, whether Mrs. G. was not told of the program or whether the lack of transportation and the hours made it impossible for Steven to attend. During that summer, Steven stayed with a baby-sitter who had no training in special education. There was testimony that Steven's behavior deteriorated that summer and that he suffered regression in his ability to stand, point, and feed himself.
 
 
 6
 The next year Mrs. G.'s request for summer services and transportation was refused by school officials, without consultation with Steven's Admission, Review and Dismissal (ARD) Committee or with his teacher. The only caretaker Mrs. G. could find for Steven lived a mile outside of the district boundary, and even during the school year, the School District would not provide out-of-district transportation.
 
 
 7
 Mrs. G. then employed legal counsel and appealed the denial of services to the Texas Education Agency. The administrative hearing officer issued an interim order requesting a meeting of Steven's ARD Committee to consider the issue of summer services. The ARD Committee met and agreed only to provide some adaptive equipment for Steven and to request consultative services from the state during the summer of 1981. On August 21, 1981, the hearing officer issued a "proposal for decision" in which he found that the School District was required to provide summer services and related transportation services during 1981, and also required the School District to make a decision regarding summer services for 1982 by March of 1982.
 
 
 8
 After various motions, an administrative appeal to the State Commissioner of Education, and a change in the required administrative procedures, the hearing officer, in December 1982, issued an order adopting the decision of the Commissioner of Education as the final order of the case. This order required the School District to provide Steven with full summer services and transportation for all succeeding summers. In February 1982, the School District filed its complaint in federal district court.
 
 
 9
 In the interim, the School District did not provide summer services comparable to those provided Steven during the regular school year. In the summer of 1981, Steven was enrolled at The Learning Tree, a child care center in San Antonio. Some adaptive equipment was provided by the School District, and state regional consultants provided indirect speech, occupational and physical therapy services through the Learning Tree staff. The evidence proffered suggested that during the 1981 summer Steven advanced in his ability to communicate by using his "communication boards" and in his social and feeding skills. However, the evidence suggested that, because Steven lacked structured physical training, he regressed in his development of motor skills and mobility.
 
 
 10
 Steven returned to Cambridge in the fall of 1981, and on November 9, 1981, Steven's ARD Committee again met. After some discussion, the Committee recommended that Steven receive out-of-district transportation. The School District did not act on that recommendation, and did not provide transportation.
 
 
 11
 After the School District had filed its suit in district court, Steven's ARD Committee met again on April 5, 1982. The meeting began with a discussion of Steven's progress, and eventually shifted to the subject of institutionalization. The ARD Committee voted, with Mrs. G. as the lone dissenter, to recommend that Steven be placed in an institution with immediate placement in an intermediate care facility. Mrs. G. then left the meeting, and the issue of summer services for 1982 was not considered. On May 26, 1982, however, the School District filed a supplemental complaint in the district court alleging that the ARD Committee recommendation for institutionalization mooted the case, and that it should, therefore, be dismissed. The district court rejected that argument.
 
 
 12
 In the summer of 1982, Mrs. G. arranged for Steven's placement at the Warm Springs Rehabilitation Hospital in Gonzalez, Texas, from the first week of June until the third week in July. He was given an educational program with a special education teacher, and received physical, occupational, and speech therapy twice each day. While at Warm Springs, Steven developed the ability to walk approximately thirty feet between parallel bars and could walk perhaps twenty feet in a "walker." He also made substantial progress in his communication skills.
 
 
 13
 After trial, in 1984, the district court rendered its final judgment for Mrs. G. and Steven. The court found that the School District had a policy of denying summer services to handicapped children regardless of their needs and issued an injunction against the further implementation of such a policy. The district court also made the following finding of fact:
 
 
 14
 Without some kind of continuous, structured educational program during the summer months, Steven G. will regress in skills learned and knowledge gained in the previous 180-day academic year. Although the Court has insufficient evidence to conclude that Steven G. would definitely suffer severe regression after a summer without such a program, neither can it conclude that he would not and there is evidence that shows that Steven G. has suffered more than the loss of skills in isolated instances, and that he has required recoupment time of more than several weeks after summers without continuous, structured programming. A summer without continuous, structured programming would result in substantial regression of knowledge gained and skills learned, and, given the severity of Steven G.'s handicaps, this regression would be significant. (Emphasis added.)
 
 
 15
 Pursuant to this finding, the court ordered injunctive relief requiring Steven's ARD Committee to recommend, and the School District to provide free of charge, structured summer programming for Steven to the extent necessary to "conform to the requirements of the EAHCA, its implementing regulations and the relevant guidelines of the Texas Education Agency." The court stated that Steven's "ARD Committee should determine the appropriate placement given [the] degree of regression [found by the court]," and that in determining this placement, the ARD Committee was to have considerable discretion.
 
 
 16
 In response to the preliminary and permanent injunctive relief granted by the district court, the School Board has since provided Steven with a full summer program, with a teacher, an aide, and state regional consultative services.
 
 II.
 
 17
 The School District argues that it has a legal duty to provide summer placement only if a handicapped child will suffer "severe regression in cognitive skills gained and disciplines learned" due to an interruption of programming. They assert that the evidence presented before the district court did not show that Steven did or would suffer such severe regression, and that, accordingly, the district court had no basis to order the relief it did.
 
 
 18
 The School District also contests the district court's finding that it has a policy of denying summer services to handicapped children as totally unsupported by the evidence. The district court's conclusion on this issue is, however, amply supported by the record. In any event, the School District does not now attempt to question the court's holding of Crawford v. Pittman,[2] that the EAHCA does not allow a blanket prohibition on summer services for handicapped children. Thus, the issue presented is whether this particular child, Steven G., is entitled under the Act to have structured summer programming included in his IEP.
 
 A.
 
 19
 Pursuant to the provisions of the EAHCA, the School District is required to provide Steven with a "free appropriate public education."[3] That mandate includes "the requirement that the education to which access is provided be sufficient to confer some educational benefit upon the handicapped child."[4] As we stated in Crawford v. Pittman, "The basic substantive standard under the Act, then, is that each IEP must be formulated to provide some educational benefit to the child,"[5] in accordance with "the unique needs"[6] of that child. The some-educational-benefit standard does not mean that the requirements of the Act are satisfied so long as a handicapped child's progress, absent summer services, is not brought "to a virtual standstill."[7] Rather, if a child will experience severe or substantial regression during the summer months in the absence of a summer program, the handicapped child may be entitled to year-round services. The issue is whether the benefits accrued to the child during the regular school year will be significantly jeopardized if he is not provided an educational program during the summer months. This is, of course, a general standard, but it must be applied to the individual by the ARD Committee in the same way that juries apply other general legal standards such as negligence and reasonableness.[8] The issue is simply the application of the Crawford ruling to the situation of a particular handicapped child.
 
 B.
 
 20
 In Tatro v. Texas,[9] Judge Gee, writing for the court, stated that the EAHCA has "placed primary responsibility for formulating handicapped children's education in the hands of state and local school agencies in cooperation with each child's parents."[10] In deference to this statutory scheme and the reliance it places on the expertise of local education authorities, we stated in Tatro that the Act creates a "presumption in favor of the education placement established by [a child's] IEP," and "the party attacking its terms should bear the burden of showing why the educational setting established by the IEP is not appropriate."[11]
 
 
 21
 In April 1982, Steven's ARD Committee, over Mrs. G.'s objection, proposed that Steven be institutionalized. The state administrative decision, however, required the School District to provide summer services and transportation to Steven. The School District does not argue here in support of institutionalization. It contends, however, that the regression experienced by Steven over the summer months is not so severe as to require a structured summer program basically equivalent to that provided during the school year. Instead, the School District stands ready to provide certain adaptive equipment and consultative services to Steven over the summer months.
 
 
 22
 The testimony concerning Steven's particular regression-recoupment tendencies was directly conflicting: the School District's employees and consultants were unanimous that they observed no significant regression, while the doctors, therapists, and former teachers who testified on behalf of Steven all agreed that Steven required a continuous structured program in order to prevent significant regression. The record thus clearly supports, although it does not compel, the district court's assessment of the facts presented--"that Steven G. would suffer at least substantial regression without continuous, structured programming."
 
 
 23
 The district court carefully phrased its conclusion and, while it did not explicitly state that the educational program offered by the School District did not meet the "some educational benefit" standard of Rowley, the district court showed that it was aware of that decision and its judgment is therefore tantamount to such a conclusion. Hence, we hold that the district court applied the appropriate standard to the factual determinations supported by the record. The general injunctive relief granted by the court was appropriate to ensure that Steven receives the summer programming to which he is entitled under the Act.
 
 III.
 
 24
 With respect to out-of-district transportation for Steven G., the district court found that transportation is included in the definition of "related service" under 20 U.S.C. Sec. 1401(a)(17) and that such transportation does not cease to be a related service simply because a parent requests transportation to a site a short distance beyond the district boundaries.
 
 
 25
 The School District first contends that this issue has not been exhausted administratively and that it is, therefore, not ripe for determination.[12] The district court found that, although the specific out-of-district nature of the transportation was not ruled upon in the administrative hearings, the School District was fully aware of the issue and the final order issued by the Hearing Officer required that transportation be provided by the district. We find that the issue is, therefore, ripe for determination.[13]
 
 
 26
 Section 1401(a)(17) of Title 20 specifically provides: "The term 'related services' means transportation, and such ... other supportive services ... as may be required to assist a handicapped child to benefit from special education." The Act does not further define "transportation." The parties have not cited, nor can this court find, any case law directly addressing the out-of-district dimensions of this transportation issue. A district court in Pinkerton v. Moye,[14] however, was faced with an analogous situation. In Pinkerton, the services required by the handicapped child were not available in her home school district, although they were available in a neighboring school district. The court refused to require the home school district to furnish the special services, finding that the provision of services to the child through the adjacent school district was sufficient under the Act. But the court also found that, given the child's "special situation," it would be "appropriate" to require the school board to reimburse the child's parent if the parent decided to obtain alternative transportation to the neighboring school that would be more direct and accommodating than that provided by the home school district.[15]
 
 
 27
 This analysis suggests that the "transportation" required as a "related service" under the Act is not arbitrarily limited by the geographic boundaries of the school district so long as it is required for the special circumstances of the handicapped child and is reasonable when all of the facts are considered. The district court implicitly found Mrs. G.'s request for one-mile out-of-district transportation for Steven reasonable. The School District has not argued that the transportation would in any way create a burden, much less an unfair burden, on the School District or on other children being transported. There is neither evidence nor argument that going a mile out of the district boundaries would create any substantial additional expense, disrupt efficient planning of school bus routes, entail additional time to transport other children, or in any other way inconvenience other children on the bus route. Instead, the School District has merely insisted that, although "generic" transportation is defined as a related service required to enable a handicapped child to benefit from special education, out-of-district transportation, because it is out-of-district, is not. We cannot agree. Unless the transportation request is shown to be unreasonable, the Act requires that such transportation be provided as a related service.
 
 IV.
 
 28
 Mrs. G. also asserts on appeal that she is entitled to reimbursement for expenses incurred during the summers of 1981, when she enrolled Steven in the Learning Tree day care center, and 1982, when Steven spent six weeks at the Gonzalez Warm Springs Rehabilitation Hospital. The district court, relying on Scokin v. Texas[16] and 20 U.S.C. Sec. 1415(e)(3), found that because Steven was placed in those summer programs unilaterally, without the approval of or consultation with the School District, an award for restitution is precluded by the Act.
 
 
 29
 Since the district court's decision, the Supreme Court has decided Town of Burlington v. Department of Education.[17] In Burlington, the Court interpreted EAHCA sections 1415(e)(2),[18] which relates to judicial review, and 1415(e)(3), which provides in pertinent part:
 
 
 30
 During the pendency of any proceedings conducted pursuant to [the Act], unless the state or local educational agency and the parents or guardian otherwise agree, the child shall remain in the then current educational placement of such child ....
 
 
 31
 The Court in Burlington held that a parent's removal of a child from its "then current educational placement" does not constitute a waiver of the parent's right to reimbursement for the expenses of the "unilateral" placement during the pendency of the proceedings. The Court reasoned that the authority conferred upon the reviewing court by Sec. 1415(e)(2)--to "grant such relief as the court determines is appropriate"--must include "the power to order school authorities to reimburse parents for their expenditures on private special education if the court ultimately determines that such placement, rather than the proposed IEP, is proper under the Act."[19]
 
 
 32
 The School District agrees that Burlington controls, but it argues that Mrs. G. is not entitled to reimbursement because the district court did not find that the "substitute" private placements chosen by her for Steven for the 1981 and 1982 summers were "proper under the Act." The facts of this case present a slightly different scenario than that presented to the Court in Burlington. In Burlington, as here, the district court determined that the school's proposed IEP was inappropriate, but it also found that the interim private placement chosen by the parent was the placement actually required under the Act.
 
 
 33
 In this case, while the district court found that Steven was entitled to some sort of continuous, structured summer programming, it did not explicitly find that the substitute summer placements chosen by Mrs. G. constituted the specific type of programming necessitated by the Act. This distinction, however, need not preclude Mrs. G. from receiving any reimbursement from the School District. The rationale behind Burlington 's holding is that parents who elect to risk shouldering the costs of what they perceive to be a more appropriate placement, and whose judgment is wholly or in part vindicated by the district court, should receive more than an "empty victory."[20] As stated by the Court, if "appropriate relief" in the form of reasonable reimbursement is not allowed, "the child's right to a free appropriate public education, the parents' right to participate fully in developing a proper IEP, and all of the procedural safeguards would be less than complete."[21]
 
 
 34
 Mrs. G. may be entitled to full reimbursement of her expenses for the 1981 summer when Steven was enrolled in the Learning Tree day care center. Such a program, although it might not have been adequate under the EAHCA, was better than no summer program at all. The Burlington rule is not so narrow as to permit reimbursement only when the interim placement chosen by the parent is found to be the exact proper placement required under the Act. Conversely, when Steven was at the Gonzales Warm Springs Rehabilitation Hospital, he may have received more "benefit" than the EAHCA requires. Whether Mrs. G. is entitled to full reimbursement for this summer placement requires further inquiry by the district court on remand. Under Sec. 1415(e)(2) of the Act, the district court is authorized to "grant such relief as the court determines is appropriate." Factors that the court may consider in determining whether full or partial reimbursement is in order would include the existence of other, perhaps more suitable, substitute placements, the effort expended by Mrs. G. in securing alternative placements, and the general cooperative or uncooperative position of the School District itself.
 
 
 35
 Hence, pursuant to Burlington, we remand this issue to the district court to determine the appropriate amount of reimbursement due Mrs. G. under the particular circumstances of this case.
 
 V.
 
 36
 Mrs. G. also requests attorneys' fees. Applying the Supreme Court decision in Smith v. Robinson,[22] the district court denied this request. Smith held that the EAHCA is the exclusive remedy for handicapped children asserting a right to a free appropriate education, and it provides no right to attorney's fees. Therefore, even when EAHCA claimants also invoke 42 U.S.C. Sec. 1983 and assert equal protection claims, they are not entitled to attorney's fees under 42 U.S.C. Sec. 1988 unless relief is also granted for a separate constitutional violation. Mrs. G. asserts that her claim for attorney's fees rests on two exceptions mentioned in Smith: (1) a distinct due process claim[23] and (2) a separate violation of section 504 of the Rehabilitation Act.[24]
 
 
 37
 Mrs. G. argues that the School District's policy of refusing to provide a summer program to any handicapped child in the school district is a violation of the due process clause. The district court found that such a policy existed, that it violated the procedural requirements of the EAHCA, and granted Mrs. G. declaratory and injunctive relief on this claim. Although the court refused to rule on this claim as a due process claim, it found that the claim presented substantial constitutional questions. Mrs. G. argues that Smith establishes that Congress intended to preclude reliance on Sec. 1983 as a remedy for a substantial unaddressed equal protection claim, but it did not preclude reliance on Sec. 1983 with respect to substantial due process claims. The district court rejected this argument, stating that the rationale behind Smith also precluded awarding attorneys' fees for a substantially identical, unaddressed due process claim under Sec. 1983.
 
 
 38
 In Teresa Diane P. v. Alief Independent School District,[25] this court considered a due process claim that was based on the school district's alleged "failure to protect Diane's procedural rights to notice, evaluation, consent, development of individualized education plans, timing of meetings, and expulsion of services."[26]
 
 Looking to Smith for guidance, we quoted:
 
 39
 ... unlike an independent equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the [EAHCA's] comprehensive scheme. Under either the [EAHCA] or Sec. 1983, a plaintiff would be entitled to bypass the administrative process by obtaining injunctive relief only on a showing that irreparable harm otherwise would result. [Citation omitted.] And, while Congress apparently has determined that local and state agencies should not be burdened with attorney's fees to litigants who succeed, through resort to the procedures outlined in the [EAHCA], in requiring those agencies to provide free schooling, there is no indication that agencies should be exempt from a fee award where plaintiffs have had to resort to judicial relief to force the agencies to provide them the process they were constitutionally due.[27]
 
 
 40
 Pursuant to this reasoning, the court found that attorney's fees would be available to the plaintiffs if, upon remand, it was shown that claims for an independent procedural due process violation were raised and favorably adjudicated.
 
 
 41
 The due process claim asserted by Mrs. G. in this action differs from the procedural due process claims asserted by Teresa Diane P, which entailed the failure of the school authority to protect her various procedural rights in notice, evaluation, consent, etc. Mrs. G. does not contend Steven was denied any of these procedural rights; she simply asserts that Steven was denied the substantive benefits conferred by the Act because of the School District's policy of denying all handicapped children summer services. This claim simply invoked the Act. As stated by the Second Circuit in Bonar v. Ambach, "Where a claim may be decided under the terms of the [EAHCA], then no separate action under 42 U.S.C. Sec. 1983 may be obtained."[28]
 
 
 42
 Mrs. G.'s efforts to obtain the appropriate provision of free educational services for her son were pursued within the administrative framework set up by the State of Texas pursuant to EAHCA guidelines. The success she achieved in requiring the School District to provide Steven with an appropriate individualized educational placement, including summer services, was obtained through and within the "elaborate, precisely defined administrative and judicial enforcement system."[29] Because we find that, whether or not denominated due process, the claims upon which Mrs. G. has prevailed are rights granted by the EAHCA, and because the EAHCA contains no provision for attorney's fees, we agree with the district court that no attorney's fees are to be awarded under Sec. 1988.
 
 
 43
 We also find that Mrs. G. is not entitled to attorney's fees under the Rehabilitation Act. In Smith, the Court stated, "Of course, if a State provided services beyond those required by the [EAHCA], but discriminatorily denied those services to a handicapped child, Section 504 [of the Rehabilitation Act] would remain available as an avenue of relief."[30] Mrs. G. asserts that the fact that the School District provided a summer remedial reading program, free of charge, to nonhandicapped children without providing an analogous free summer program to handicapped children is a clear instance of discrimination on the basis of handicap in violation of Sec. 504.[31] We do not agree. Under the EAHCA, the School District is required to provide handicapped children with a free, appropriate education geared towards their individual needs. If a handicapped child's IEP requires summer services under the EAHCA, he is entitled to summer services. The fact that the School District affords some nonhandicapped children remedial help during the summer does not mean that it is required to offer similar remedial summer guidance to handicapped children, irrespective of whether their individual IEP's provide for structured summer services. The school district's action in Steven's case has not been shown to constitute discrimination on the basis of his handicap distinct from the protection afforded under the EAHCA. Hence, Mrs. G. is not entitled to attorney's fees under 29 U.S.C. Sec. 794a(b), the attorney's fees provision of the Rehabilitation Act.[32]
 
 VI.
 
 44
 Finally, the School District argues that it was denied due process by the procedures employed by the State Board of Education during the administrative stage of this action. It contends that under Helms v. McDaniel,[33] the hearing officer's initial proposed decision of August 24, 1981 should have been considered the final decision of the case and that the hearing officer's later adoption of the Commissioner of Education's decision was a direct violation of Helms. It contends that the failure of the hearing officer to adopt his initial proposed decision as the final decision of the case denied them due process. The School District does not favor us with any authority for the proposition that an adjudicative officer is prohibited by the due process clause from changing his opinion in the course of an orderly procedure. We find the district court did not err in dismissing the School District's due process claims against the state defendants.
 
 
 45
 For these reasons the judgment of the district court is AFFIRMED in part, REVERSED in part, and REMANDED to the district court for proceedings consistent with this opinion.
 
 PER CURIAM:
 
 46
 We express no opinion on the issue whether, if Mrs. G's expenditures were actually defrayed by insurance provided by employers (her own and her former husband's), she should be reimbursed. That issue should be raised and decided by the district court. This being the only issue raised by the application for rehearing, the application is DENIED.
 
 
 
 [1]
 20 U.S.C. Secs. 1401-61
 
 
 [2]
 708 F.2d 1028 (5th Cir.1983)
 
 
 [3]
 20 U.S.C. Sec. 1412(1)
 
 
 [4]
 Board of Educ. v. Rowley, 458 U.S. 176, 200, 102 S.Ct. 3034, 3048, 73 L.Ed.2d 690 (1982)
 
 
 [5]
 Crawford, 708 F.2d at 1035
 
 
 [6]
 Id. at 1034
 
 
 [7]
 Battle v. Pennsylvania, 629 F.2d 269, 282 (Van Dusen, J., concurring) (3d Cir.1980), cert. denied, 452 U.S. 968, 101 S.Ct. 3123, 69 L.Ed.2d 981 (1981); see also Crawford, 708 F.2d at 1034 n. 28
 
 
 [8]
 See Scokin v. Texas, 723 F.2d 432, 439 & n. 6 (5th Cir.1984)
 
 
 [9]
 703 F.2d 823 (5th Cir.1983), aff'd, 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984)
 
 
 [10]
 Id. at 830; see also Rowley, 458 U.S. 176, 207-08, 102 S.Ct. 3034, 3051-52, 73 L.Ed.2d 690 (1982)
 
 
 [11]
 Tatro, 703 F.2d at 830
 
 
 [12]
 See Ezratty v. Puerto Rico, 648 F.2d 770, 774 (1st Cir.1981)
 
 
 [13]
 See McGee v. United States, 402 U.S. 479, 483, 91 S.Ct. 1565, 1568, 29 L.Ed.2d 47 (1971)
 
 
 [14]
 509 F.Supp. 107 (W.D.Va.1981)
 
 
 [15]
 Id. at 109
 
 
 [16]
 723 F.2d 432, 439 (5th Cir.1984); see also Marvin H. v. Austin Indep. Sch. Dist., 714 F.2d 1348, 1353 (5th Cir.1983); Stacy G. v. Pasadena Indep. Sch. Dist., 695 F.2d 949, 954 (5th Cir.1983)
 
 
 [17]
 --- U.S. ----, 105 S.Ct. 1996, 85 L.Ed.2d 385 (1985)
 
 
 [18]
 20 U.S.C. Sec. 1415(e)(2) provides: "[T]he court shall receive the record of the administrative proceedings, shall hear additional evidence at the request of a party, and, basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate." (Emphasis added.)
 
 
 [19]
 Burlington, --- U.S. at ----, 105 S.Ct. at 2002
 
 
 [20]
 Id. 105 S.Ct. at 2003
 
 
 [21]
 Id
 
 
 [22]
 468 U.S. 992, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984); see also Irving Indep. Sch. Dist. v. Tatro, 468 U.S. 883, ----, 104 S.Ct. 3371, 3379, 82 L.Ed.2d 664 (1984)
 
 
 [23]
 Smith, 468 U.S. at ---- & n. 17, 104 S.Ct. at 3470-71 & n. 17
 
 
 [24]
 Id. at ---- & n. 22, 104 S.Ct. at 3472-74 & n. 22
 
 
 [25]
 744 F.2d 484 (5th Cir.1984)
 
 
 [26]
 Id. at 491
 
 
 [27]
 Id. (quoting Robinson, 468 U.S. at ---- n. 17, 104 S.Ct. at 3471 n. 17) (emphasis added)
 
 
 [28]
 771 F.2d 14, 18 (2nd Cir.1985) (and cases cited therein)
 
 
 [29]
 Id. at 19 (quoting Quackenbush v. Johnson City Sch. Dist., 716 F.2d 141, 147 (2d Cir.1983), cert. denied, 465 U.S. 1071, 104 S.Ct. 1426, 79 L.Ed.2d 750 (1984)
 
 
 [30]
 Smith, 468 U.S. at ---- n. 22, 104 S.Ct. at 3473 n. 22
 
 
 [31]
 See Yaris v. Special School Dist. of St. Louis County, 558 F.Supp. 545, 561 (E.D.Mo.1983), aff'd 728 F.2d 1055 (8th Cir.1984)
 
 
 [32]
 See Smith, 468 U.S. at ----, 104 S.Ct. at 3474; Yaris v. Special School Dist. of St. Louis County, 780 F.2d 724, 727 (8th Cir.1986)
 
 
 [33]
 657 F.2d 800 (5th Cir.1981), cert. denied, 455 U.S. 946, 102 S.Ct. 1443, 71 L.Ed.2d 658 (1982)