**Henri and Mary TATRO et al.**

v.

**The STATE OF TEXAS et al.**

No. CA-3-79-1281-G.

United States District Court,
N. D. Texas,
Dallas Division.

Dec. 21, 1979.

---

Moseley, Jones, Enoch, & Martin by Craig T. Enoch, Dallas, Tex., for plaintiffs.

O. Glenn Weaver, Irving, Tex., for J. F. Townley.

Mark White, Atty. Gen. of Texas, Austin, Tex., for State of Texas and Texas Education Agency.

Martha H. Allan, Asst. Atty. Gen., Austin, Tex., for Roger Hill, Dr. Robert Pierce, Mrs. Anne Pfaff, Barbara Cardwell, Troy Kelley, Mrs. Pat Norman, & John Stipes.

Deatherage & Weaver by James W. Deatherage, Irving, Tex., for defendants.

## MEMORANDUM OPINION

PATRICK E. HIGGINBOTHAM, District Judge.

Amber Tatro is a 3½ year old female suffering from myelomenengocele, commonly referred to as spina bifida. As a result of this handicap, Amber not only suffers from orthopedic and speech impediments, but also from what is called a neurogenic bladder. Because of the neurogenic bladder condition, she must be "catheterized" approximately every three or four hours each day, the method of choice being Clean Intermittent Catheterization ("CIC"). This procedure involves washing a little metal tube, the catheter, inserting the catheter in the bladder to allow the urine to drain out, pulling the catheter out, and then wiping the bladder region. This procedure can be performed by laymen after proper training, but because of the child's age, she is unable to perform CIC upon herself. This suit is rooted in the decision of the Irving Independent School District that were Amber to attend its early childhood development program, the school would not provide CIC to Amber during her school day.

Henri and Mary Tatro, individually and as next friend of Amber Tatro, brought this action for injunctive relief and money damages against the State of Texas, the State Board of Education, the Texas Education Agency, the Board of Trustees for the Irving Independent School District, and J. F. Townley, individually, as Superintendent of the Irving Independent School District. Plaintiffs allege that provision of CIC to Amber is required by the Education of All Handicapped Children Act, 20 U.S.C. § 1401, et seq., the Rehabilitation Act of 1973, 29 U.S.C. § 701 et seq., and the stated policy of the Irving Independent School District, *Treatment of Students by School Personnel,* Policy No. 5157. Plaintiffs have applied for a preliminary injunction ordering defendants to provide catheterization for Amber during the pendency of this suit. Defendant Townley filed a motion to dismiss the complaint as against him.

A parent is indeed a "hostage to fate." Caring for a child under the best of circumstances taxes financial and emotional reserves—here, most heavily. Amber's plight tugs at the heartstrings, and given the relative rarity of spina bifida, there is a temptation to here achieve a "humane" result. Despite the limited number of times school boards may be faced with a child requiring CIC, the interpretation of these federal statutes has wide consequences because it involves definitions of the duty of hundreds of school districts to be discharged in myriad factual patterns. The limits on this court's institutional role here gives little play for this court's humanitarian concern for Amber and her parents. This court instead is called on to engage in the relatively emotionally barren task of providing the interstitial stuffing to acts of Congress against a background of its intent and purpose in enactment. Doing so, the court concludes that the application for preliminary injunction must be denied and the motion to dismiss the complaint as against Townley must be granted.[1]

To assist the states in educating the handicapped, federal grants are made available to them under the Education for All Handicapped Children Act. Grants are conditional on the states establishing "a policy that assures all handicapped children the right to a free appropriate public education." 20 U.S.C. § 1412(1). *See also, Lora v. Board of Education of City of New York,* 456 F.Supp. 1211, 1226 (E.D.N.Y.1978); 20 U.S.C. § 1414(a)(6)–(7). Plaintiffs assert that the Act is to be interpreted in this case as *requiring* provision of CIC to Amber. This court disagrees.

Free appropriate public education is statutorily defined as "special education" and

---

1. While no legal duty is owed by the District and the other defendants, one hopes that they will, out of compassion within the limits of their institutions, attempt to ease the burdens on Amber's parents.

"related services" which meet certain requirements. 20 U.S.C. § 1401(18). Plaintiffs assert that the provision of CIC to Amber is a related service. The term "related service" is defined as:

. . . transportation, and such developmental, corrective, and other supportive services (including speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education, and includes the early identification and assessment of handicapping conditions in children.

20 U.S.C. § 1401(17).

 Free appropriate public education refers to special education *and related* services which meet various conditions. The services required to be provided must be "related" to the special education. Amber suffers from a physical condition which unfortunately necessitates that she receive CIC every three or four hours. CIC is required whether or not she is attending school. CIC is not any more related to "special education" than other requisites to her existence, such as food or water. Provision of CIC, unlike such listed "related services" as "speech pathology and audiology, psychological services, physical and occupational therapy, [and] recreation," is not directly related to the provision of "special education."

The definition of "related services" has only two categories: (1) transportation as may be required to assist a handicapped child to benefit from special education, and (2) supportive services as may be required to assist a handicapped child to benefit from special education. The transportation provision is not applicable and while it makes possible the continued health of Amber, CIC does not enhance the benefits of a particular form of special education. If CIC be deemed a medical service, it would still not be a medical service for "diagnostic and evaluation purposes." CIC is not developmental or corrective.

CIC is supportive of Amber's education in the sense that it is required at sufficiently frequent intervals that her education and CIC must proceed apace. One can argue that read literally, every necessary life support system must be furnished. But the court has found no congressional intent to sweep broadly in its usage of the word "related." Instead the court finds that to be related in the statutory sense the service requirement must arise from the effort to educate. There is a difference between maintenance of life systems and enhancing a handicapped person's ability to learn. The CIC is essential to Amber's life but once that life maintenance service is provided, it is unrelated to her learning skills.

This court has not been presented with any evidence in the legislative history which would indicate that the term "related services" can be construed as broadly as plaintiffs urge. To the contrary, the language used while evincing a broad purpose carefully limits the means of achieving them. For example, medical services while illustrated by a listing of a variety of services is carefully limited to diagnostic and evaluation purposes. That qualification is inconsistent with finding a congressional intent to furnish all support services needed by persons during school not because of the schooling but because that care is always required. The notion of related services as being those services that make more beneficial the special education being provided was contained even in the original Senate Bill; the term "related services" was originally defined as:

. . . transportation, developmental, corrective, and supportive services (specifically including at least speech pathology and audiology, psychological services, counseling services, physical and occupational therapy, and recreation) *necessary* for a handicapped child to *fully benefit from special education*, and including early identification and assessment of handicapping conditions in children and provision of such services to such children . . . . .

**1228**

(Emphasis added). S.Rep.No.168, 94th Cong., 1st Sess., *reprinted in* [1975] U.S. Code Cong. & Admin.News, pp. 1425, 1466.

■ Plaintiffs point to regulations implementing 20 U.S.C. § 1401(17) which include among "related services," "school health services." The regulations in turn define the latter as "services provided by a qualified school nurse or other qualified person . . . ," 45 C.F.R. § 121a.13(b)(10) (1978). Because CIC's can be performed by nurses, plaintiffs argue it is a permissible "school health service."

But the statute does not require provision of CIC, and the implementing regulations obviously can only implement duty; it cannot create duty. Nevertheless, we examine this argument to correct a possible misinterpretation of these delphic regulations. Though § 121a.13(10) on its face purports to define "school health services," looking at it closely should make it clear that it is not a complete definition. After all, "services provided by a qualified school nurse or other qualified person" covers an enormous array of services having nothing to do with the education of handicapped children. Section 121a.13(a) of the regulations defines "related services" as:

. . . transportation and such developmental, corrective, and other supportive services as are required to assist a handicapped child to benefit from special education, and includes speech pathology and audiology, psychological services, physical and occupational therapy, recreation, early identification and assessment of disabilities in children, counseling services, and medical services for diagnostic or evaluation purposes. The term also includes school health services, social work services in schools, and parent counseling and training.

The most logical interpretation of the regulations is that "school health services" mean those services which not only meet the requirements of § 121a.13(b)(10) but also are "related services" as defined in the first sentence of § 121a.13(a). The definition of "related service" in the regulation follows closely its definition in the statute. It follows that provision of CIC cannot be a "related service" by the terms of the regulations. And thus provision of CIC here is not a "school health service."

Plaintiffs also allege violation of the Rehabilitation Act of 1973, specifically, 29 U.S.C. § 794. Section 794 provides in part:

No otherwise qualified handicapped individual in the United States, as defined in section 706(7) of this title, shall, solely by reason of his handicap, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency or by the United States Postal Service.

Plaintiffs allege that defendants, in refusing to provide CIC to Amber, are effectively denying Amber the benefits of, and effectively excluding Amber from a federally-funded program and so are violating § 794.

■ The court finds otherwise even assuming that plaintiffs have a right of action under this Act. Here the defendants are merely refusing to affirmatively provide catheterization. The Rehabilitation Act cannot be interpreted as requiring a school to furnish catheterization that Amber would need regardless of whether she is taking advantage of any educational programs or not. Plaintiffs assert that local defendants with the agreement of state defendants "have refused to provide [catheterization]. No alternative was given to Amber's parents other than for one of them to attend to Amber's needs during the school day." Brief for Plaintiffs at 10. The latter half of this assertion is ambiguous. In light of the complaint, the plaintiffs' brief taken as a whole, plaintiffs' proposed stipulation of facts, and a conference held in chambers, the most reasonable interpretation of that assertion is that Amber's participation in the program is conditioned on either her parents or her parents' agents providing catheterization. This is simply the corollary to the decision to not provide CIC to Amber, and is permissible under the

Rehabilitation Act. Plaintiffs cannot convert a statute prohibiting discrimination in certain governmental programs to a statute requiring, in essence, the setting up of governmental health care for people seeking to participate in such programs.

 Analysis of the regulations which implement both the Rehabilitation Act and the Education Act leads to the same conclusion. Section 84.33 of Title 45 of the Code of Federal Regulations requires certain provision of free appropriate public education. The definition of appropriate public education is analogous to that definition in the Education Act, appropriate education here being composed of "regular or special education" and *related* "aids and services." 45 C.F.R. § 84.33(b) (1978). The relatedness requirement would prevent provision of CIC here as well. In addition, plaintiffs cannot rely on a requirement that defendants provide "nonacademic and extracurricular services and activities in such manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities." 45 C.F.R. § 84.37(a)(1) (1978). Though nonacademic and extracurricular services and activities may include health services, the connection between provision of CIC and an equal opportunity to participate in nonacademic and extracurricular services is far from clear to this court.

Plaintiffs also argue that provision of CIC by the Irving Independent School District would be the provision of a life-saving service, already authorized by its policy number 5157, *Treatment of Students by School Personnel.* Section B of the policy states:

B. Hypodermic injections may be given at school, but *only* on an emergency (life saving) basis. For example: for individuals who are highly allergic to insect bites, diabetes or other conditions this shall be done under the following conditions: . . . .

The use of the word "emergency" would preclude regular CIC "injections." Moreover, catheterizations are not "injections."

Defendant Townley's motion to dismiss as to him is granted and plaintiffs' motion for a preliminary injunction is DENIED.