# IRVING INDEPENDENT SCHOOL DISTRICT *v.* TATRO
## ET UX., INDIVIDUALLY AND AS NEXT FRIENDS
## OF TATRO, A MINOR

No. 83–558.   Argued April 16, 1984—Decided July 5, 1984

884

BURGER, C. J., delivered the opinion of the Court, in which WHITE, BLACKMUN, POWELL, REHNQUIST, and O'CONNOR, JJ., joined, and in all but Part III of which BRENNAN, MARSHALL, and STEVENS, JJ., joined. BRENNAN, J., filed an opinion concurring in part and dissenting in part, in which MARSHALL, J., joined, *post*, p. 896. STEVENS, J., filed an opinion concurring in part and dissenting in part, *post*, p. 896.

*James W. Deatherage* argued the cause for petitioner. With him on the briefs was *O. Glenn Weaver*.

*James C. Todd* argued the cause and filed a brief for respondents.*

---

*\*Susan F. Heiligenthal* filed a brief for the Texas Association of School Boards Legal Assistance Fund as *amicus curiae* urging reversal.

Briefs of *amici curiae* urging affirmance were filed for the Association for Persons with Severe Handicaps et al. by *Marilyn Holle;* for the New

CHIEF JUSTICE BURGER delivered the opinion of the Court.

We granted certiorari to determine whether the Education of the Handicapped Act or the Rehabilitation Act of 1973 requires a school district to provide a handicapped child with clean intermittent catheterization during school hours.

## I

Amber Tatro is an 8-year-old girl born with a defect known as spina bifida. As a result, she suffers from orthopedic and speech impairments and a neurogenic bladder, which prevents her from emptying her bladder voluntarily. Consequently, she must be catheterized every three or four hours to avoid injury to her kidneys. In accordance with accepted medical practice, clean intermittent catheterization (CIC), a procedure involving the insertion of a catheter into the urethra to drain the bladder, has been prescribed. The procedure is a simple one that may be performed in a few minutes by a layperson with less than an hour's training. Amber's parents, babysitter, and teenage brother are all qualified to administer CIC, and Amber soon will be able to perform this procedure herself.

In 1979 petitioner Irving Independent School District agreed to provide special education for Amber, who was then three and one-half years old. In consultation with her parents, who are respondents here, petitioner developed an individualized education program for Amber under the

Jersey Department of the Public Advocate by *Joseph H. Rodriguez, Herbert D. Hinkle*, and *Michael L. Perlin;* for the New York State Commission on the Quality of Care for the Mentally Disabled, Protection and Advocacy System, by *Herbert Semmel* and *Minna J. Kotkin;* and for the Spina Bifida Association of America et al. by *Janet F. Stotland.*

Briefs of *amici curiae* were filed for the American Association of School Administrators by *Allen D. Schwartz;* and for the National School Boards Association by *Gwendolyn H. Gregory, August W. Steinhilber*, and *Thomas A. Shannon.*

requirements of the Education of the Handicapped Act, 84 Stat. 175, as amended significantly by the Education for All Handicapped Children Act of 1975, 89 Stat. 773, 20 U. S. C. §§ 1401(19), 1414(a)(5). The individualized education program provided that Amber would attend early childhood development classes and receive special services such as physical and occupational therapy. That program, however, made no provision for school personnel to administer CIC.

Respondents unsuccessfully pursued administrative remedies to secure CIC services for Amber during school hours.[1] In October 1979 respondents brought the present action in District Court against petitioner, the State Board of Education, and others. See § 1415(e)(2). They sought an injunction ordering petitioner to provide Amber with CIC and sought damages and attorney's fees. First, respondents invoked the Education of the Handicapped Act. Because Texas received funding under that statute, petitioner was required to provide Amber with a "free appropriate public education," §§ 1412(1), 1414(a)(1)(C)(ii), which is defined to include "related services," § 1401(18). Respondents argued that CIC is one such "related service."[2] Second, respondents invoked § 504 of the Rehabilitation Act of 1973, 87 Stat. 394, as amended, 29 U. S. C. § 794, which forbids an individual, by reason of a handicap, to be "excluded from the

---

[1] The Education of the Handicapped Act's procedures for administrative hearings are set out in 20 U. S. C. § 1415. In this case a hearing officer ruled that the Education of the Handicapped Act did require the school to provide CIC, and the Texas Commissioner of Education adopted the hearing officer's decision. The State Board of Education reversed, holding that the Act did not require petitioner to provide CIC.

[2] As discussed more fully later, the Education of the Handicapped Act defines "related services" to include "supportive services (including . . . medical and counseling services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from special education." 20 U. S. C. § 1401(17).

participation in, be denied the benefits of, or be subjected to discrimination under" any program receiving federal aid.

The District Court denied respondents' request for a preliminary injunction. *Tatro* v. *Texas*, 481 F. Supp. 1224 (ND Tex. 1979). That court concluded that CIC was not a "related service" under the Education of the Handicapped Act because it did not serve a need arising from the effort to educate. It also held that § 504 of the Rehabilitation Act did not require "the setting up of governmental health care for people seeking to participate" in federally funded programs. *Id.*, at 1229.

The Court of Appeals reversed. *Tatro* v. *Texas*, 625 F. 2d 557 (CA5 1980) *(Tatro I)*. First, it held that CIC was a "related service" under the Education of the Handicapped Act, 20 U. S. C. § 1401(17), because without the procedure Amber could not attend classes and benefit from special education. Second, it held that petitioner's refusal to provide CIC effectively excluded her from a federally funded educational program in violation of § 504 of the Rehabilitation Act. The Court of Appeals remanded for the District Court to develop a factual record and apply these legal principles.

On remand petitioner stressed the Education of the Handicapped Act's explicit provision that "medical services" could qualify as "related services" only when they served the purpose of diagnosis or evaluation. See n. 2, *supra*. The District Court held that under Texas law a nurse or other qualified person may administer CIC without engaging in the unauthorized practice of medicine, provided that a doctor prescribes and supervises the procedure. The District Court then held that, because a doctor was not needed to administer CIC, provision of the procedure was not a "medical service" for purposes of the Education of the Handicapped Act. Finding CIC to be a "related service" under that Act, the District Court ordered petitioner and the State Board of Education to modify Amber's individualized education pro-

gram to include provision of CIC during school hours. It also awarded compensatory damages against petitioner. *Tatro* v. *Texas*, 516 F. Supp. 968 (ND Tex. 1981).[3]

On the authority of *Tatro I*, the District Court then held that respondents had proved a violation of §504 of the Rehabilitation Act. Although the District Court did not rely on this holding to authorize any greater injunctive or compensatory relief, it did invoke the holding to award attorney's fees against petitioner and the State Board of Education.[4] 516 F. Supp., at 968; App. to Pet. for Cert. 55a–63a. The Rehabilitation Act, unlike the Education of the Handicapped Act, authorizes prevailing parties to recover attorney's fees. See 29 U. S. C. §794a.

The Court of Appeals affirmed. *Tatro* v. *Texas*, 703 F. 2d 823 (CA5 1983) *(Tatro II)*. That court accepted the District Court's conclusion that state law permitted qualified persons to administer CIC without the physical presence of a doctor, and it affirmed the award of relief under the Education of the Handicapped Act. In affirming the award of attorney's fees based on a finding of liability under the Rehabilitation Act, the Court of Appeals held that no change of circumstances since *Tatro I* justified a different result.

We granted certiorari, 464 U. S. 1007 (1983), and we affirm in part and reverse in part.

## II

This case poses two separate issues. The first is whether the Education of the Handicapped Act requires petitioner to

---

[3] The District Court dismissed the claims against all defendants other than petitioner and the State Board, though it retained the members of the State Board "in their official capacities for the purpose of injunctive relief." 516 F. Supp., at 972–974.

[4] The District Court held that § 505 of the Rehabilitation Act, 29 U. S. C. § 794a, which authorizes attorney's fees as a part of a prevailing party's costs, abrogated the State Board's immunity under the Eleventh Amendment. See App. to Pet. for Cert. 56a–60a. The State Board did not petition for certiorari, and the Eleventh Amendment issue is not before us.

provide CIC services to Amber. The second is whether §504 of the Rehabilitation Act creates such an obligation. We first turn to the claim presented under the Education of the Handicapped Act.

States receiving funds under the Act are obliged to satisfy certain conditions. A primary condition is that the state implement a policy "that assures all handicapped children the right to a free appropriate public education." 20 U. S. C. §1412(1). Each educational agency applying to a state for funding must provide assurances in turn that its program aims to provide "a free appropriate public education to all handicapped children." §1414(a)(1)(C)(ii).

A "free appropriate public education" is explicitly defined as "special education and related services." §1401(18).[5] The term "special education" means

> "specially designed instruction, at no cost to parents or guardians, to meet the unique needs of a handicapped child, including classroom instruction, instruction in physical education, home instruction, and instruction in hospitals and institutions." §1401(16).

"Related services" are defined as

> "transportation, and such developmental, corrective, and other *supportive services (including* speech pathology and audiology, psychological services, physical and occupational therapy, recreation, and *medical* and counseling *services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a handicapped child to benefit from*

---

[5] Specifically, the "special education and related services" must

"(A) have been provided at public expense, under public supervision and direction, and without charge, (B) meet the standards of the State educational agency, (C) include an appropriate preschool, elementary, or secondary school education in the State involved, and (D) [be] provided in conformity with the individualized education program required under section 1414(a)(5) of this title." §1401(18).

*special education,* and includes the early identification and assessment of handicapping conditions in children." § 1401(17) (emphasis added).

The issue in this case is whether CIC is a "related service" that petitioner is obliged to provide to Amber. We must answer two questions: first, whether CIC is a "supportive servic[e] . . . required to assist a handicapped child to benefit from special education"; and second, whether CIC is excluded from this definition as a "medical servic[e]" serving purposes other than diagnosis or evaluation.

## A

The Court of Appeals was clearly correct in holding that CIC is a "supportive servic[e] . . . required to assist a handicapped child to benefit from special education."[6] It is clear on this record that, without having CIC services available during the school day, Amber cannot attend school and thereby "benefit from special education." CIC services therefore fall squarely within the definition of a "supportive service."[7]

---

[6] Petitioner claims that courts deciding cases arising under the Education of the Handicapped Act are limited to inquiring whether a school district has followed the requirements of the state plan and has followed the Act's procedural requirements. However, we held in *Board of Education of Hendrick Hudson Central School District* v. *Rowley,* 458 U. S. 176, 206, n. 27 (1982), that a court is required "not only to satisfy itself that the State has adopted the state plan, policies, and assurances required by the Act, but also to determine that the State has created an [individualized education plan] for the child in question which conforms with the requirements of § 1401(19) [defining such plans]." Judicial review is equally appropriate in this case, which presents the legal question of a school's substantive obligation under the "related services" requirement of § 1401(17).

[7] The Department of Education has agreed with this reasoning in an interpretive ruling that specifically found CIC to be a "related service." 46 Fed. Reg. 4912 (1981). Accord, *Tokarcik* v. *Forest Hills School District,* 665 F. 2d 443 (CA3 1981), cert. denied *sub nom. Scanlon* v. *Tokarcik,* 458 U. S. 1121 (1982). The Secretary twice postponed temporarily the effective date of this interpretive ruling, see 46 Fed. Reg. 12495 (1981); *id.,* at

As we have stated before, "Congress sought primarily to make public education available to handicapped children" and "to make such access meaningful." *Board of Education of Hendrick Hudson Central School District* v. *Rowley*, 458 U. S. 176, 192 (1982). A service that enables a handicapped child to remain at school during the day is an important means of providing the child with the meaningful access to education that Congress envisioned. The Act makes specific provision for services, like transportation, for example, that do no more than enable a child to be physically present in class, see 20 U. S. C. § 1401(17); and the Act specifically authorizes grants for schools to alter buildings and equipment to make them accessible to the handicapped, § 1406; see S. Rep. No. 94–168, p. 38 (1975); 121 Cong. Rec. 19483–19484 (1975) (remarks of Sen. Stafford). Services like CIC that permit a child to remain at school during the day are no less related to the effort to educate than are services that enable the child to reach, enter, or exit the school.

We hold that CIC services in this case qualify as a "supportive servic[e] . . . required to assist a handicapped child to benefit from special education."[8]

## B

We also agree with the Court of Appeals that provision of CIC is not a "medical servic[e]," which a school is required to provide only for purposes of diagnosis or evaluation. See 20 U. S. C. § 1401(17). We begin with the regulations of the

18975, and later postponed it indefinitely, *id.*, at 25614. But the Department presently does view CIC services as an allowable cost under Part B of the Act. *Ibid.*

[8] The obligation to provide special education and related services is expressly phrased as a "conditio[n]" for a state to receive funds under the Act. See 20 U. S. C. § 1412; see also S. Rep. No. 94–168, p. 16 (1975). This refutes petitioner's contention that the Act did not "impos[e] an obligation on the States to spend state money to fund certain rights as a condition of receiving federal moneys" but "spoke merely in precatory terms," *Pennhurst State School and Hospital* v. *Halderman*, 451 U. S. 1, 18 (1981).

Department of Education, which are entitled to deference.[9] See, e. g., *Blum* v. *Bacon*, 457 U. S. 132, 141 (1982). The regulations define "related services" for handicapped children to include "school health services," 34 CFR § 300.13(a) (1983), which are defined in turn as "services provided by a qualified school nurse or other qualified person," § 300.13(b) (10). "Medical services" are defined as "services provided by a licensed physician." § 300.13(b)(4).[10] Thus, the Secretary has determined that the services of a school nurse otherwise qualifying as a "related service" are not subject to exclusion as a "medical service," but that the services of a physician are excludable as such.

This definition of "medical services" is a reasonable interpretation of congressional intent. Although Congress devoted little discussion to the "medical services" exclusion, the Secretary could reasonably have concluded that it was designed to spare schools from an obligation to provide a service that might well prove unduly expensive and beyond the range of their competence.[11] From this understanding of

---

[9] The Secretary of Education is empowered to issue such regulations as may be necessary to carry out the provisions of the Act. 20 U. S. C. § 1417(b). This function was initially vested in the Commissioner of Education of the Department of Health, Education, and Welfare, who promulgated the regulations in question. This function was transferred to the Secretary of Education when Congress created that position, see Department of Education Organization Act, §§ 301(a)(1), (2)(H), 93 Stat. 677, 20 U. S. C. §§ 3441(a)(1), (2)(H).

[10] The regulations actually define only those "medical services" that *are* owed to handicapped children: "services provided by a licensed physician to determine a child's medically related handicapping condition which results in the child's need for special education and related services." 34 CFR § 300.13(b)(4) (1983). Presumably this means that "medical services" *not* owed· under the statute are those "services by a licensed physician" that serve other purposes.

[11] Children with serious medical needs are still entitled to an education. For example, the Act specifically includes instruction in hospitals and at home within the definition of "special education." See 20 U. S. C. § 1401(16).

congressional purpose, the Secretary could reasonably have concluded that Congress intended to impose the obligation to provide school nursing services.

Congress plainly required schools to hire various specially trained personnel to help handicapped children, such as "trained occupational therapists, speech therapists, psychologists, social workers and other appropriately trained personnel." S. Rep. No. 94–168, *supra*, at 33. School nurses have long been a part of the educational system, and the Secretary could therefore reasonably conclude that school nursing services are not the sort of burden that Congress intended to exclude as a "medical service." By limiting the "medical services" exclusion to the services of a physician or hospital, both far more expensive, the Secretary has given a permissible construction to the provision.

Petitioner's contrary interpretation of the "medical services" exclusion is unconvincing. In petitioner's view, CIC is a "medical service," even though it may be provided by a nurse or trained layperson; that conclusion rests on its reading of Texas law that confines CIC to uses in accordance with a physician's prescription and under a physician's ultimate supervision. Aside from conflicting with the Secretary's reasonable interpretation of congressional intent, however, such a rule would be anomalous. Nurses in petitioner School District are authorized to dispense oral medications and administer emergency injections in accordance with a physician's prescription. This kind of service for nonhandicapped children is difficult to distinguish from the provision of CIC to the handicapped.[12] It would be strange indeed if Congress,

---

[12] Petitioner attempts to distinguish the administration of prescription drugs from the administration of CIC on the ground that Texas law expressly limits the liability of school personnel performing the former, see Tex. Educ. Code Ann. § 21.914(c) (Supp. 1984), but not the latter. This distinction, however, bears no relation to whether CIC is a "related service." The introduction of handicapped children into a school creates numerous new possibilities for injury and liability. Many of these risks are

in attempting to extend special services to handicapped children, were unwilling to guarantee them services of a kind that are routinely provided to the nonhandicapped.

To keep in perspective the obligation to provide services that relate to both the health and educational needs of handicapped students, we note several limitations that should minimize the burden petitioner fears. First, to be entitled to related services, a child must be handicapped so as to require special education. See 20 U. S. C. § 1401(1); 34 CFR § 300.5 (1983). In the absence of a handicap that requires special education, the need for what otherwise might qualify as a related service does not create an obligation under the Act. See 34 CFR § 300.14, Comment (1) (1983).

Second, only those services necessary to aid a handicapped child to benefit from special education must be provided, regardless how easily a school nurse or layperson could furnish them. For example, if a particular medication or treatment may appropriately be administered to a handicapped child other than during the school day, a school is not required to provide nursing services to administer it.

Third, the regulations state that school nursing services must be provided only if they can be performed by a nurse or other qualified person, not if they must be performed by a physician. See 34 CFR §§ 300.13(a), (b)(4), (b)(10) (1983). It bears mentioning that here not even the services of a nurse are required; as is conceded, a layperson with minimal training is qualified to provide CIC. See also, *e. g.*, *Department of Education of Hawaii* v. *Katherine D.*, 727 F. 2d 809 (CA9 1983).

---

more serious than that posed by CIC, which the courts below found is a safe procedure even when performed by a 9-year-old girl. Congress assumed that states receiving the generous grants under the Act were up to the job of managing these new risks. Whether petitioner decides to purchase more liability insurance or to persuade the State to extend the limitation on liability, the risks posed by CIC should not prove to be a large burden.

Finally, we note that respondents are not asking petitioner to provide *equipment* that Amber needs for CIC. Tr. of Oral Arg. 18–19. They seek only the *services* of a qualified person at the school.

We conclude that provision of CIC to Amber is not subject to exclusion as a "medical service," and we affirm the Court of Appeals' holding that CIC is a "related service" under the Education of the Handicapped Act.[13]

## III

Respondents sought relief not only under the Education of the Handicapped Act but under § 504 of the Rehabilitation Act as well. After finding petitioner liable to provide CIC under the former, the District Court proceeded to hold that petitioner was similarly liable under § 504 and that respondents were therefore entitled to attorney's fees under § 505 of the Rehabilitation Act, 29 U. S. C. § 794a. We hold today, in *Smith* v. *Robinson, post,* p. 992, that § 504 is inapplicable when relief is available under the Education of the Handicapped Act to remedy a denial of educational services. Respondents are therefore not entitled to relief under § 504, and we reverse the Court of Appeals' holding that respondents

---

[13] We need not address respondents' claim that CIC, in addition to being a "related service," is a "supplementary ai[d] and servic[e]" that petitioner must provide to enable Amber to attend classes with nonhandicapped students under the Act's "mainstreaming" directive. See 20 U. S. C. § 1412(5)(B). Respondents have not sought an order prohibiting petitioner from educating Amber with handicapped children alone. Indeed, any request for such an order might not present a live controversy. Amber's present individualized education program provides for regular public school classes with nonhandicapped children. And petitioner has admitted that it would be far more costly to pay for Amber's instruction and CIC services at a private school, or to arrange for home tutoring, than to provide CIC at the regular public school placement provided in her current individualized education program. Tr. of Oral Arg. 12.

are entitled to recover attorney's fees. In all other respects, the judgment of the Court of Appeals is affirmed.

*It is so ordered.*

JUSTICE BRENNAN, with whom JUSTICE MARSHALL joins, concurring in part and dissenting in part.

I join all but Part III of the Court's opinion. For the reasons stated in my dissenting opinion in *Smith* v. *Robinson, post,* p. 992, I would affirm the award of attorney's fees to the respondents.

JUSTICE STEVENS, concurring in part and dissenting in part.

The petition for certiorari did not challenge the award of attorney's fees. It contested only the award of relief on the merits to respondents. Inasmuch as the judgment on the merits is supported by the Court's interpretation of the Education of the Handicapped Act, there is no need to express any opinion concerning the Rehabilitation Act of 1973.* Accordingly, while I join Parts I and II of the Court's opinion, I do not join Part III.

---

*The "Statement of the Questions Presented" in the petition for certiorari reads as follows:

"1. Whether 'medical treatment' such as clean intermittent catheterization is a 'related service' required under the Education for All Handicapped Children Act and, therefore, required to be provided to the minor Respondent.

"2. Is a public school required to provide and perform the medical treatment prescribed by the physician of a handicapped child by the Education of All Handicapped Children Act or the Rehabilitation Act of 1973?

"3. Whether the Fifth Circuit Court of Appeals misconstrued the opinions of this Court in *Southeastern Community College* v. *Davis, Pennhurst State School & Hospital* v. *Halderman,* and *State Board of Education* v. *Rowley.*" Pet. for Cert. i.

Because the Court does not hold that the Court of Appeals answered any of these questions incorrectly, it is not justified in reversing in part the judgment of that court.