METROPOLITAN GOVERNMENT OF NASHVILLE AND DAVIDSON COUNTY, Plaintiffs-Appellees,

v.

TENNESSEE DEPARTMENT OF EDUCATION, et al., Defendants Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

Jan. 25, 1989.

Permission to Appeal Denied by Supreme Court May 8, 1989.

Kevin S. Key, Kathryn F. Calhoun, Metropolitan Dept. of Law, Nashville, for plaintiffs-appellees.

Mary Juanita Presley, E.A.C.H., Inc., Nashville, for defendants-appellants.

## OPINION

CANTRELL, Judge.

In this appeal, we are asked to decide whether a student's placement in a psychiatric hospital was an educational placement under the Education of the Handicapped Act (EHA), as amended by the Education for Handicapped Children Act of 1975 and other amendments, 20 U.S.C. § 1401, *et seq.* (1982, Supp. I 1983, and Supp. IV 1986). If so, the act makes the school district responsible for the hospitalization expenses.

Michael Doe was born on July 22, 1970 and has attended schools in Davidson County since kindergarten. He is a handicapped child under the definitions of EHA; he has a learning disability, fine and gross motor skills deficits, and poor relations with peers and authority figures. After Michael failed the seventh grade, he spent two years at Benton Hall, a private school for children with learning disabilities. At the end of the 1985–86 school year, the principal at Benton Hall advised the parents that Michael had outgrown Benton Hall academically.

In the summer of 1986, Michael's parents and officials from the local school system met and discussed a program for his educational needs. The school officials recommended a special day program at Hillwood High School; this program is an Option 8 under a classification system used by the Tennessee State Department of Education which lists ten increasingly restrictive types of service options. The special day program offered small classes, a clinical psychologist, and special counseling. Michael's parents, however, opposed placement in that program and pressed for something less restrictive, an Option 7 or 5, in hopes that these programs would be more challenging. At a multi-disciplinary team meeting on August 15, 1986, the parties agreed on a less restrictive program at Hillsboro High School, where Michael would attend regular classes and get special support from the school staff.

The plan did not work. Michael had trouble in his math class and began to skip classes and stay away from school altogether. His behavior became so irrational that his parents sent him to a psychiatrist in the latter part of September of 1986. When Michael's behavior did not improve and his parents became concerned that he might be suicidal, the psychiatrist recommended that Michael be admitted to the Parthenon Pavilion, a private psychiatric unit in Nashville. Michael stayed at Parthenon Pavilion from October 27 until December 12 of 1986.

On December 1, 1986, Michael's parents requested a due process hearing on the question of reimbursement for the expenses incurred while Michael was in the

Parthenon Pavilion. After a hearing on June 21, 1987, the hearing officer found that the placement at the Parthenon Pavilion was appropriate and necessary in order for Michael to benefit educationally. Consequently, he ordered the school system to reimburse Michael's parents for all the expenses incurred at the Parthenon Pavilion.

The local school system appealed the decision to the Chancery Court of Davidson County where the Chancellor reversed the decision of the hearing officer, holding that the decision was not supported by substantial and material evidence.

## I.

Under 20 U.S.C. § 1414(a), a local education agency desiring EHA funding must attempt to furnish "a free appropriate public education to all handicapped children." 20 U.S.C. § 1414(a)(1)(C)(ii). According to the statutory definition, "free appropriate public education" includes "special education and related services." 20 U.S.C. § 1401(18). Although "related services" may include medical services, the act does not require a school system to provide services by a physician except those necessary for diagnostic and evaluation purposes. 20 U.S.C. § 1401(17); *see also Irving Independent School District v. Tatro,* 468 U.S. 883, 104 S.Ct. 3371, 82 L.Ed.2d 664 (1984). The regulations promulgated to implement the EHA state:

(a) As used in this part, the term "related services" means transportation and such developmental, corrective, and other supportive services as are required to assist a handicapped child to benefit from special education, and includes speech pathology and audiology, psychological services, physical and occupational therapy, recreation, early identification and assessment of disabilities in children, counseling services, and medical services for diagnostic or evaluation purposes. The term also includes school health services, social work services in schools, and parent counseling and training.
(b) . . .
(4) "Medical services" means services provided by a licensed physician to determine a child's medically related handicapping condition which results in the child's need for special education and related services.

34 C.F.R. § 300.13 (1987).

In *Irving Independent School District v. Tatro,* 468 U.S. at 883, 104 S.Ct. at 3371, the question was whether the EHA required a school district to provide a handicapped child with clean intermittent catheterization during school hours. The United States Supreme Court held that the school district was responsible for that service. *Id.* at 895, 104 S.Ct. at 3378. The Court said:

We also agree with the Court of Appeals that provision of CIC is not a "medical servic[e]," which a school is required to provide *only for purposes of diagnosis or evaluation.*

*Id.* at 891, 104 S.Ct. at 3376 (emphasis added).

The Court reasoned that, since CIC could be provided by a school nurse or other qualified person, and was not required to be performed by a physician, the act and the regulations do not exclude the service. A physician's services, however, are covered by the act only when necessary to provide diagnosis or evaluation.

██ Since the physician's services at issue here were not necessary for diagnosis or evaluation, we are persuaded that payment for the services rendered by Michael's psychiatrist are expressly excluded by the EHA.

██ As to the cost of Michael's stay in the Parthenon Pavilion, a different set of criteria applies. The EHA provides for residential placement when such placement is necessary to meet the individual needs of a handicapped person. *See* 20 U.S.C. §§ 1401(16), 1413(a)(4)(B). Residential placement, however, must be the least restrictive placement appropriate to the child's individual needs. 20 U.S.C. § 1412(5)(B). In addition, when hospitalization is required, a court must analyze "whether full-time placement may be considered necessary for educational purposes, or whether the residential placement is a response to medical, social or emotional

**430**

problems that are segregrable from the learning process." *Kruelle v. New Castle County School District*, 642 F.2d 687, 693 (3d Cir.1981).

In this case, we are persuaded that the decision to place Michael in the Parthenon Pavilion was for medical reasons rather than for educational purposes. Michael's psychiatrist testified that Michael had problems with authority and with his peers—problems that went beyond his need for appropriate educational services. Specifically, the psychiatrist testified:

Q. At the time he threatened to harm himself and you placed him in Parthenon Pavilion, did you have any educational therapy in mind, or was this a medical decision?

A. It was a medical decision. Of course, I knew that when you put him in that or any other child psychiatric hospital that they will have a school.

Q. But the initial decision was medical?

A. Uh-huh, to keep him from harming himself and running away.

Just six weeks prior to his confinement in Parthenon Pavilion, Michael's parents requested a program that involved participation in regular school classes at Hillsboro High School supplemented by support services from special education and occupational therapy. It is hard to imagine that Michael's educational needs escalated so suddenly that by late October he required a residential or hospital placement. There is no evidence in the record from which that conclusion could be drawn.

## II.

■ The appellants argue that the chancellor failed to follow the standard of review required by the Administrative Procedures Act (APA), Tenn.Code Ann. § 4-5-101, *et seq.* (1985 and Supp.1988), and that, in determining the weight of the evidence, the chancellor substituted his judgment for that of the hearing officer.

In *Ogden v. Kelley*, 594 S.W.2d 702 (Tenn.1980), the Supreme Court of Tennessee held that a hearing officer appointed by the State Board of Education to conduct a due process hearing is an agency under the APA definition, Tenn.Code Ann. § 4-5-102(2), and that review of the hearing officer's decision is governed by the APA rules on contested cases.

Under Tenn.Code Ann. § 4-5-322(h), the courts are allowed to reverse or modify the agency's decision if the "findings, inferences, conclusions, or decisions are: (1) In violation of constitutional or statutory provisions; ... or (5) Unsupported by evidence which is both substantial and material in the light of the entire record." We are of the opinion that the chancellor's decision to reverse the decision of the hearing officer was correct under both of these subsections. There is no evidence in the record to support a conclusion that Michael needed to be institutionalized for his educational needs. In our opinion, to order institutionalization under the facts in the record would be a violation of the EHA's mandate to provide educational services for handicapped children in the least restrictive environment necessary under the circumstances.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for any further proceedings necessary. Tax the costs on appeal to the appellants.

TODD, P.J., and LEWIS, J., concur.