# IN THE SUPREME COURT OF IOWA

No. 21–0095

Submitted November 17, 2021—Filed December 30, 2021

**HILLS & DALES CHILD DEVELOPMENT CENTER,**

Appellant,

vs.

**IOWA DEPARTMENT OF EDUCATION,**

Appellee,

and

**KEYSTONE AREA EDUCATION AGENCY** and **DUBUQUE COMMUNITY SCHOOL DISTRICT,**

Intervenors–Appellees.

Appeal from the Iowa District Court for Dubuque County, Thomas A. Bitter, Judge.

A service provider for individuals with disabilities challenges the Iowa Department of Education's declaratory order regarding excusing students from school for private therapy under Iowa Code chapter 299 and the federal Individuals with Disabilities Education Act. **AFFIRMED.**

Appel, J., delivered the opinion of the court, in which all justices joined.

Brian J. Kane (argued) of Kane, Norby & Reddick, P.C., Dubuque, for appellant.

Thomas J. Miller, Attorney General, and Jordan G. Esbrook (argued), Assistant Attorney General, for appellee.

Dustin T. Zeschke of Swisher & Cohrt, P.L.C., Waterloo, for intervenor–appellee Keystone Area Education Agency.

Jenny L. Weiss of Fuerste, Carew, Juergens & Sudmeier, P.C., Dubuque, for intervenor–appellee Dubuque Community School District.

**APPEL, Justice.**

In this case, we consider a number of challenges to a declaratory order related to the provision of services to children entered by the Iowa Department of Education (Department) at the request of the Keystone Area Education Agency (Keystone). The gist of the questions posed was whether public agencies are required to release or excuse students to receive what is known as applied behavioral analysis therapy (ABA therapy), and if so, under what circumstances. A provider of ABA therapy services, Hills & Dales Child Development Center (Hills & Dales), intervened and urged that the Department should declare that students should be released from school for ABA therapy if so ordered by a physician.

The Department's declaratory order interpreted a number of relevant statutes, including Iowa Code chapter 299 governing compulsory education in Iowa and the Individuals with Disabilities Education Act (IDEA), 20 U.S.C. ch. 33. The Department's declaratory order answered five questions posed by Keystone. The Department determined, among other things, that the decision whether to excuse an absence for ABA therapy is generally up to the school district. The Department further determined that a public agency that does excuse attendance for therapy may violate federal law if the absence leads to students missing services provided by the student's individual education plan (IEP).

Hills & Dales appealed the Department's declaratory order to the district court pursuant to the Iowa Administrative Procedure Act. Iowa Code

§ 17A.20 (2021). The district court affirmed the Department's order. Hills & Dales appealed the decision of the district court. For the reasons expressed below, we affirm the decision of the district court in all respects.

### I. Facts and Procedural Background.

**A. The Parties.** We begin with a brief review of the parties in the underlying action. Keystone is an area education agency under Iowa Code section 273.2. Keystone is the agency responsible for identifying and serving children who require special education in northeast Iowa, including the Dubuque Community School District. Keystone sought a declaratory judgment from the Department because of its concern that students eligible for special education were missing school time to attend private therapy.

Hills & Dales is a nonprofit service provider for individuals with disabilities. It is a licensed ICF/ID (intellectual disabilities) provider, but it is not an accredited school. Among other services, Hills & Dales provides children with ABA therapy. Hills & Dales intervened in Keystone's declaratory proceeding, filed an answer before the agency, and participated in the administrative process.

The Dubuque Community School District is a local school district in the geographic area of Keystone and Hills & Dales. The school district also intervened in the dispute before the agency. The legislature has authorized the board of directors of school districts to "operate, control, and supervise all public schools" located in the district and to exercise broad and implied powers "related to the operation, control, and supervision of those public schools." *Id.* § 274.3(1).

The Iowa Department of Education is the state agency that oversees the provision of public education in Iowa. The legislature established the Department "to act in a policymaking and advisory capacity and to exercise general supervision over the state system of education." *Id.* § 256.1(1).

**B. Proceedings Before the Department.** Keystone's petition for a declaratory order contained five questions. Three related to the legal responsibilities of public agencies regarding excusing students from school for private therapy and whether doing so would violate its duty under the IDEA. The last two questions related to the options for parents who do not elect competent private instruction and yet wish to have their kids attend private therapy.

After briefing and a hearing, the Department issued its declaratory order. The questions posed by Keystone and the answers provided by the Department are provided below:

> [1]. Under Iowa Code chapter 299A, is a public agency required to excuse a student for therapy, with or without a physician's excuse?
>
> *Answer*: No. This decision is committed by statute to the school district.
>
> [2]. If a public agency is not required to excuse a student for therapy, when can a public agency be found to have abused its discretion?
>
> *Answer*: Whether a public agency abuses its discretion will be determined by the facts of each case, including the public agency's obligation to comply with applicable law.
>
> [3]. If a public agency does excuse a student for therapy pursuant to a physician's order, can the public agency be found to have denied that student a Free Appropriate Public Education ("FAPE")?

*Answer*: A public agency that excuses a child for therapy may violate the IDEA if the services required by a child's IEP are not provided because the child is being withheld from school for private therapy.

[4]. For a parent who does not elect competent private instruction ("CPI"), what options are available to the student if [the parents do] not want their student enrolled full time with the public agency?

*Answer*: The student, if compulsory attendance age, is subject to Iowa Code chapter 299. If a parent does not elect CPI and does not otherwise comply with compulsory attendance law, the school may take any available action, including but not limited to action under Iowa Code chapter 299 or action available under its district attendance policies. If the source of the parent's disagreement is with an IEP Team decision, the parent has procedural safeguards available under the IDEA.

[5]. For a student who does not qualify for CPI, which may include students residentially placed in a medical facility, what options are available to the student if the parents do not want their student enrolled full time in the public agency?

*Answer*: The student, if compulsory attendance age, is subject to Iowa Code chapter 299. If a parent is not able to elect CPI and does not otherwise comply with compulsory attendance law, the school may take any available action, including but not limited to action under Iowa Code chapter 299 or action available under its district attendance policies. If the source of the parent's disagreement is with an IEP Team decision, the parent has procedural safeguards available under the IDEA.

**C. District Court Proceedings.** Hills & Dales appealed the declaratory order to the district court. The district court held that the declaratory order was a correct statement of law, was supported by substantial evidence, and was not unjustifiable and illogical, or arbitrary and capricious.

**II. Standard of Review.**

A party adversely affected by a final agency action is entitled to judicial review. Iowa Code § 17A.19(1). "Iowa Code section 17A.19(10) of the Iowa

Administrative Procedure Act governs judicial review of administrative agency decisions." *Banilla Games, Inc. v. Iowa Dep't of Inspections & Appeals*, 919 N.W.2d 6, 11 (Iowa 2018). The court's standard of review on the claim that the Department erred in interpreting the law and acted beyond its authority in issuing the declaratory order is for errors of law under Iowa Code section 17A.19(10)(*b*). *Iowa Ins. Inst. v. Core Grp. of the Iowa Ass'n for Just.*, 867 N.W.2d 58, 64 (Iowa 2015).

**III. Discussion.**

**A. Introduction.** Although this case has its nooks and crannies, the essential issue before the court is whether public entities (school districts and area education agencies) must honor a physician's order that a child be released from school for ABA therapy. Or, whether the authority to balance the benefits of mainstream school attendance against the benefits of ABA therapy rests elsewhere.

The issue here is not whether ABA therapy is an effective therapy. Rather, the central question in this case—a question of law—is who decides whether a student can be excused from school for receiving private therapy. Specifically, is a physician's order determinative on the question of whether an absence is excused? Or, do the applicable statutes require that the decision rest with public agencies?

**B. Statutory Framework.** We begin by providing a brief overview of the statutory framework.

1. *Iowa Code chapters 256 and 299.* Iowa Code chapter 256 establishes the Iowa Department of Education "to act in a policymaking and advisory capacity and to exercise general supervision over the state system of education including . . . [p]ublic elementary and secondary schools." Iowa Code § 256.1. Under Iowa Code section 256.9(16), the director of the Department is given the authority to "[i]nterpret the school laws and rules relating to the school laws."

The general statutory framework for school attendance is provided in Iowa Code chapter 299. Under Iowa Code section 299.1A(1), the compulsory school attendance age applies to children between the ages of six and sixteen. Under Iowa Code section 299.1(2), school districts are empowered to "adopt a policy or rules relating to the reasons considered to be valid or acceptable excuses for absence from school." A child who fails to attend school according to a school board's attendance policy is a truant under Iowa Code section 299.8.

2. *Individuals with Disabilities Education Act (IDEA).* State and local school agencies must comply with the terms of the IDEA, 20 U.S.C. ch. 33. The purpose of the IDEA is "to ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs." *Id.* § 1400(d)(1)(A). The core of the IDEA is "the cooperative process that it establishes between parents and schools." *Schaffer v. Weast,* 546 U.S. 49, 53 (2005).

The IDEA requires that states and schools provide disabled children with a free and appropriate public education (FAPE). 20 U.S.C. § 1412(a)(1). FAPE means special education and related services that include transportation and

developmental, corrective, and other supportive services required to assist a child with a disability to benefit from special education. *Id.* § 1401(9), (26). The goal is to provide "services that enable a disabled child to remain in school during the day," *Cedar Rapids Cmty. Sch. Dist. v. Garret F.*, 526 U.S. 66, 73 (1999), and to provide the student with "the meaningful access to education that Congress envisioned," *Irving Indep. Sch. Dist. v. Tatro*, 468 U.S. 883, 891 (1984). While state and school authorities are required to provide "related services," they are not required to provide "medical services" outside of diagnostic or evaluation purposes. 34 C.F.R. § 300.34(c)(5) (2006). If a service is considered a related service under the IDEA, a public agency may be required to provide such service as part of a FAPE.

With respect to each disabled student, a public agency must work with parents, teachers, and experts to develop a tailored IEP. 20 U.S.C. § 1414(d)(1)(B). An IEP will include the FAPE required to meet the individual needs of each child. *Id.* § 1401(9). If parents are not satisfied with the IEP, they may pursue state law administrative remedies. *E.g.*, Iowa Admin. Code r. 281—41.506. After exhausting available state law administrative remedies, the IDEA provides that a parent may bring an action in state or federal court. 20 U.S.C. § 1415; Iowa Admin. Code r. 281—41.516.

**C. Discussion.**

1. *Authority of the Department to issue a declaratory order.* Hills & Dales argues that the Department lacked authority to issue the declaratory order in this case. Specifically, Hills & Dales argues that the Department's declaratory

order adversely affected Hills & Dales's patients and operations. Because of these negative impacts, Hills & Dales asserts that the Department exceeded its authority.

The Department responds that Hills & Dales did not preserve the issue before the agency and thus cannot raise it on appeal. In any event, the Department argues that it has interpretive authority to provide declaratory orders under Iowa Code section 256.9(16) and Iowa Code section 17A.9(1).

We agree with the Department. Under Iowa law, the Department has general authority to supervise the state public education system. Iowa Code § 256.1. Further, Iowa law expressly authorizes the Department to interpret school laws and rules related to them. *Id.* § 256.9(16); *Iowa Ass'n of Sch. Bds. v. Iowa Dep't of Educ.*, 739 N.W.2d 303, 307 (Iowa 2007). The Department's rules provide that the Department may act in an advisory capacity to help area education agencies comply with laws related to education. Iowa Admin. Code r. 281—1.4.

In the present case, Keystone requested the Department to interpret Iowa Code chapter 299 regarding attendance requirements and to clarify its duty under the IDEA to provide FAPE. Those questions are legal questions regarding education provided in this state. In response to Keystone's request, the Department provided its interpretation of Iowa law based on statutes and caselaw. We conclude that the Department was acting within its authority in issuing the declaratory order in this case.

It may be true that the Department's order has impacts on third parties not before the administrative agencies. That, of course, is true of any legal precedent. *See Iowa Ins. Inst.*, 867 N.W.2d at 66–67 (noting that a declaratory order can affect and bind nonparties like "any contested case proceeding"). The mere fact that a declaratory order may have impacts on third parties does not oust jurisdiction from the agency to issue them. The district court is correct in ruling that the Department acted within its authority in issuing the declaratory order.

2. *ABA therapy: A "related service" or "medical service."* Hills & Dales argues that the Department erred by concluding that ABA therapy is a "related service" and not a "medical service" under the IDEA. Related services include a range of services necessary to help children with disabilities to benefit from special education. 20 U.S.C. § 1401(26)(A). Under the IDEA, schools are required to provide eligible disabled children with classroom instruction and related services, which do not include medical services outside of diagnostic or evaluation purposes. *Id.* § 1400(d)(1)(A); 34 C.F.R. § 300.34(c)(5). If ABA therapy is considered a related service, a public agency is obligated to provide the therapy whenever an IEP team decides it is necessary for a FAPE.

Hills & Dales admits that ABA therapy is not provided by a physician, but argues that this fact is not dispositive of the issue of whether ABA therapy is a related or medical service. In support of its argument, Hills & Dales cites a United States Court of Appeals for the Third Circuit case, *Mary T. v. School District of Philadelphia*, 575 F.3d 235 (3d Cir. 2009). Hills & Dales argues that in *Mary T.*,

the appellate court held whether certain activities were medical services hinged on whether the services are within the traditional competence of a school, regardless of the qualifications and background of the provider of the services. Hills & Dales argues that ABA therapy is a medical service because it is not the kind of service that can be provided by a school nurse or other trained personnel. Relying on *Mary T.*, Hills & Dales believes that because ABA therapy is prescribed by a physician and performed by a board-certified practitioner, it should be considered medical under the IDEA.

The Department responds that under the statutory definition, ABA therapy is a related service and not a medical service. The Department further argues that the bright-line rule in *Garret F.* should govern, which held that "medical services" in the IDEA is for services that can only be provided by a physician. 526 U.S. at 73–74. As a result, the Department argues that ABA therapy, which is provided by a nonphysician, is not a medical service.

We agree with the Department's position. We first look at the definition of "related services" under the statute:

> The term "related services" means . . . *such developmental, corrective, and other supportive services* (including *speech-language* pathology and audiology services, . . . psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services . . . counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only) as may be required to assist a child with a disability to benefit from special education . . . .

20 U.S.C. § 1401(26)(A) (emphasis added). The United States Supreme Court interpreted "related services" to broadly encompass supportive services that

"may be required to assist a child with a disability to benefit from special education." *Garret F.*, 526 U.S. at 73.

In *Garret F.,* the Supreme Court addressed the issue of whether providing a wheelchair-bound student with one-on-one nursing care would fall within the meaning of "related service" under the IDEA. *Id.* The Supreme Court held that the IDEA sought to provide students with disabilities "services that enable a disabled child to remain in school during the day." *Id.* at 73. Such services should help provide the student with "the meaningful access to education that Congress envisioned." *Id.* (quoting *Tatro*, 468 U.S. at 891). Affirming its decision in *Tatro*, 468 U.S. 883, the Supreme Court concluded that "the term 'medical services' referred only to services that *must* be performed by a physician, and not to school health services." *Garret F.*, 526 U.S. at 73–74 (emphasis added).

The *Garret F.* Court further refused to follow a multifactor test suggested by the lower court in the case, which included consideration of a number of factors: whether the care is continuous or intermittent, whether existing school health personnel can provide the service, the cost of the service, and the potential consequences if the service is not properly performed. *Id.* at 75. Ultimately, the *Garret F.* Court settled on a bright-line rule, noting that "a rule that limits the medical services exemption to physician services is unquestionably a reasonable and generally workable interpretation of the statute." *Id.* at 76.

The Third Circuit in *Mary T.* was again charged with the interpretation of "related services" under the IDEA. 575 F.3d 235. Mary T. was a student seeking reimbursement for her placement in a residential healthcare facility. *Id.* at 239.

The issue involved was whether allowing a stay in a long-term psychiatric residential treatment facility was considered a related service under the IDEA. *Id.* at 240–41. The Third Circuit held that it was not. *Id.* at 248–49. Specifically, the Third Circuit noticed hospital services are excluded from related services under *Tatro* and *Garret F. Id.* The Third Circuit believed that allowing a student to stay long-term in such a treatment facility was "far beyond the range of competence of any public school district or that of any school nurse." *Id.*

The Department finds *Mary T.* distinguishable and notes that Mary T. was admitted to an acute-care ward of a psychiatric facility and that her treatment plan did not include academic goals. The Department believes that the issue of whether a school should be responsible for a child's hospital stay when no educational services were possible is different from whether such services are necessary to provide FAPE.

We think the Department is correct in stating that ABA therapy is a related service under the IDEA and *Garret F.* We first turn to the nature of the ABA therapy. Although Hills & Dales does not clearly explain what ABA therapy entails, the Department found in its declaratory order that ABA therapy includes services to address receptive and expressive languages, improving behavior, and play and social skills. The Department, on appeal, believes that ABA therapy can be loosely described as physical therapy, counseling services, or psychological services.

We find the Department's reasoning persuasive. Looking at the ABA treatment information provided by Hills & Dales, the treatment includes therapy

in receptive and expressive language, play and social skills, functional routines, and cognitive skill development. Those treatments can be described as "developmental, corrective, and other supportive services," falling within the realm of "related services" under the statute. 20 U.S.C. § 1401(26)(A). In fact, ABA therapy falls within the purview of "services that enable a disabled child to remain in school during the day" that *Garret F.* identified. 526 U.S. at 73.

Further, Hills & Dales concedes that ABA therapy is performed by certified practitioners, not a physician. Under *Garret F.*, to constitute as a medical service, such service must be performed by a physician. *Id.* at 74. ABA therapy, a treatment not necessarily carried out by a physician, therefore is a "related service," and not a "medical service." Decisions of the United States Supreme Court on federal law are binding on this court. *State v. Sweet*, 879 N.W.2d 811, 832 (Iowa 2016). Hills & Dales fails to argue why this court should depart from the Supreme Court precedent on federal statutes and adopt the Third Circuit's reasoning. Therefore, the district court is correct in holding that ABA therapy is considered a related service under the IDEA.

3. *Challenge to the sufficiency of evidence.* Hills & Dales asserts that the Department's declaratory order was not supported by substantial evidence regarding the impact of ABA therapy on school attendance. Hills & Dales claims that Keystone stated, without substantial evidentiary support, that ABA treatment "effectively removes a child from school for half of every day." In support of its argument, Hills & Dales points out that only some of its student patients who reside in Hills & Dales had attendance issues. It also argues that

the duration of the therapy would decrease over time. According to Hills & Dales, the Department's concern over students missing school time was exaggerated and that the Department was incorrect in relying upon attendance issues in its declaratory ruling. The Department responds by asserting that the declaratory order does not rely on specific facts or evidence, but instead is mainly a statement of law.

We agree with the Department that the declaratory ruling addresses questions of law, not facts. In its petition, Keystone asked if a public agency is required by law to allow excuses from school solely based on physicians' notes. This is purely a question of law. The declaratory order merely states that the discretion of determining good cause for nonattendance lies with school authorities on a case-by-case basis. As a result, the district court was correct in rejecting Hills & Dales's argument that the Department's legal conclusions in its declaratory order was not supported by substantial evidence.

4. *Challenge to the Department's interpretation of the IDEA.* Hills & Dales challenges the Department's declaratory order as an unjustifiable and illogical interpretation of law. In particular, Hills & Dales believes the Department erred by holding that a public agency can violate the IDEA if excusing absence for private therapy would lead to noncompliance with the IEP prescribed for each student. Hills & Dales presses the argument, declaring that the purpose of the IDEA was to ensure that students with disabilities receive education tailored to their specific needs. In its view, ABA therapy is beneficial to children with autism and should be allowed so long as a doctor prescribes it.

Hills & Dales further asserts that by giving a public agency discretion to excuse an absence and by holding that a public agency can violate the law by allowing absence for therapy in noncompliance with an IEP, the Department's interpretation runs afoul of the spirit of the IDEA. According to Hills & Dales, the agency action is thus irrational, illogical, and wholly unjustifiable in light of the adverse effects it may have on these individuals.

The Department responds that Hills & Dales's emphasis on the effectiveness of ABA therapy is misplaced. The Department argues that the real question is not whether ABA therapy is beneficial or effective, but instead is who has the legal responsibility to decide when to excuse an absence for private ABA therapy. The Department believes the law requires a public agency to make the call and claims that a physician's prescription for therapy alone does not suffice.

We agree with the Department. Neither the Department nor Keystone disputes the effectiveness of ABA therapy. Rather, the issue here is to determine who has the authority to decide if a student can miss school for private therapy: a public agency, or physicians associated with Hills & Dales. Hills & Dales tells us that the Department's interpretation of law fails to "prioritize" the right of the individual students. But the law provides that the school has the discretion to decide its attendance policies. Iowa Code section 299.1(2) states:

> The board of directors of a public school district or the governing body of an accredited nonpublic school shall set the number of days or hours of required attendance for the schools under its control. The board of directors of a public school district . . . may, by resolution, require attendance for the entire time . . . and adopt a policy or rules relating to the reasons considered to be valid or acceptable excuses for absence from school.

The statute thus gives school districts the authority to decide when to excuse a student from school for ABA private therapy.

While a public agency has broad authority regarding school attendance, this broad authority does not relieve the school district of its responsibility under the IDEA to provide a FAPE. If a student misses school time to an extent that it prevents the student from receiving the educational benefits outlined in the student's IEP, a public agency could be held liable under the IDEA.

A student, of course, may seek to have ABA therapy on school time included in the IEP as part of the student's FAPE. In such a case, an IEP team—with input from parents, teachers, and experts—should decide whether such therapy should be a part of a FAPE. It is worth noting that the Department acknowledges that a physician's recommendation "is entitled to great weight" in deciding whether school absence to receive ABA therapy should be part of the IEP. In any event, it is the school and the public agency that makes the decision; a physician's assessment alone would not be sufficient. A parent that disagrees with an IEP team's assessment may appeal the decision under the IDEA. 20 U.S.C. § 1415.

Indeed, the Department's declaratory order did not reject the possibility of including ABA therapy as a FAPE; quite the contrary, it encouraged it. It noted that "ABA [t]herapy is beyond any question . . . [a] support and related service that schools may be required to provide as a part of a FAPE." It is important to understand that the Department's declaratory order as well as our decision today should in no way be understood as questioning the value of ABA therapy

generally or in individual cases specifically. What the Department decided in its declaratory order, and what we affirm today, is that any request for private ABA therapy, and the ability to miss school for it, must be decided by the public agencies after assessing the totality of an individual's circumstances, through the IEP process.

5. *Failure to consider letters from physicians and county attorney as "arbitrary and capricious."* Hills & Dales asserts that agency action is "arbitrary" or "capricious" if taken without regard to the law or the facts of the case. Iowa Code § 17A.19(10)(*n*); *Dico, Inc. v. Iowa Emp. Appeal Bd.*, 576 N.W.2d 352, 355 (Iowa 1998). Specifically, Hills & Dales claims that the Department failed to give proper consideration to two letters made part of the record: a letter from physicians and a letter from a county attorney.

The letter from Dubuque physicians called ABA therapy "the gold standard" for children with autism spectrum disorder. The physicians' letter further asserts that "[a]utistic students who received ABA therapy are better suited to reach their fullest potential both when attending school and in their general lives. ABA therapy's critical value to a child with autism would qualify the treatment as reason for an excused absence from school."

The letter from the Dubuque County Attorney stated that "a reasonable person under most circumstances would consider physician-prescribed treatment as a reasonable excuse to be absent from a day of instruction." The county attorney offered his opinion that "physician-prescribed treatment which

causes . . . absence from a day of instruction to be a reasonable excuse for absence."

As a result of these letters, Hills & Dales suggests that a child absent from instruction for ABA therapy cannot be considered truant under Iowa Code section 299.8 ("Any child of compulsory attendance age who fails to attend school . . . without reasonable excuse for the absence, shall be deemed to be a truant."). Hills & Dales argues that the Department's declaratory order is arbitrary and capricious because it unreasonably fails to defer to the physicians and the Dubuque county attorney's opinions.

The Department responds that the agency gave appropriate consideration to the letters. According to Department, a physician order is entitled to great weight but is not determinative on the legal question of who is responsible for decision-making.

We agree with the Department. Hills & Dales does not provide a solid legal argument as to why the state agency, charged by state law with interpreting school law and supervising the Iowa state system of public education, should defer to these authorities. Iowa Code section 256.9(16) provides that the Department, and not physicians or the county attorney, is charged with the proper interpretation of school laws. The Department did not err by exercising its authority provided by statute and declining to transfer that authority to unauthorized private actors or other public authorities.

**IV. Conclusion.**

For the foregoing reasons, the district court's holding is affirmed in all aspects.

**AFFIRMED.**